409 F.Supp. 364 (1976)
UNITED STATES of America, Plaintiff,
v.
Vernon F. COOPER, Jr., Defendant.
UNITED STATES of America, Plaintiff,
v.
Vernon F. COOPER, Jr., and Vernon F. Cooper, Sr., Defendants.
Nos. 75-120-Cr-J-T, 75-156-Cr-J-T.
United States District Court, M. D. Florida, Jacksonville Division.
February 4, 1976.
*365 *366 Ernst D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for the Government.
Frederick B. Tygart, Jacksonville, Fla., for defendants.

ORDER
CHARLES R. SCOTT, District Judge.
Defendants were indicted under 18 U.S.C. Secs. 922(b)(3), 922(b)(5), 922(m), and 924(a).[1] The Government's motion to consolidate these two cases for trial was unopposed by defendants and granted by the Honorable Harvey E. Schlesinger, United States Magistrate. Before trial, and pursuant to Fed.R.Crim.P. 41(e), defendants moved to suppress the bound acquisition-disposition volume (commonly and hereafter known as "the logbook") that was kept by defendants during their business, and all evidentiary information gathered therefrom.

*367 THE FACTS
Defendant Vernon F. Cooper, Jr., owns and operates Clay Hardware in Orange Park, Duval County, Jacksonville, Florida. Vernon F. Cooper, Sr., works there as an employee. Cooper, Jr., is a licensed firearms dealer, in accordance with 18 U.S.C. Sec. 923(b)(3). On December 4, 1973, Special Agent Stoney Winston Daw, of the United States Treasury Department's Division of Alcohol, Tobacco, and Firearms, inspected the firearms records of defendant Cooper, Jr. At that time he discovered that the records contained evidence of a violation of the criminal statutes involved here. Daw informed Cooper, Jr., of his "Miranda rights." Between December 4, 1973, and November 21, 1974, agent Daw visited the store and inspected the logbooks several times.
On November 21, 1974, Special Agent Daw again visited the store during business hours and inspected the records. He discovered that an entry that indicated a violation of the criminal statutes in December 1973 had been altered. He then advised Cooper, Jr., that he was going to take the logbook with him. Cooper, Jr., protested, asking how he could continue his firearms sales without his logbook. Daw replied that Cooper, Jr., should not worry about it because the logbook would be returned within a few days. Daw gave Cooper, Jr., a receipt for the logbook. Daw believed that he had the authority to take the logbook and he was concerned about the destruction, alteration, or concealment of material evidence. The logbook was not returned for over a year. However, Cooper, Jr., opened a new logbook and continued selling guns.

THE LAW
The issue here is whether the seizure of the logbook was in violation of defendants' Fourth Amendment rights, necessitating that the logbook, and all evidentiary information contained therein, be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). It is axiomatic constitutional law that searches and seizures are to be conducted pursuant to search warrants of current and particularized specificity. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). There are, however, several constitutionally recognized exceptions to the requirement of search warrants.[2] Statutorily authorized warrantless searches are one of the exceptions. Congress clearly has the power to authorize by statute warrantless searches of federally licensed or regulated businesses, if the searches are specifically and reasonably restricted to comply with Fourth Amendment standards. *368 United States v. Biswell, 406 U.S. 311, 315-17, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72, 76, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); United States v. Montrom, 345 F.Supp. 1337, 1339-40 (E.D.Pa.1972). In such situations, the statutory authority is the equivalent of a valid search warrant. United States v. Petrucci, 486 F.2d 329, 332 (9th Cir. 1973); United States v. Business Bldrs., Inc., 354 F.Supp. 141, 143 (N.D.Okl.1973); United States v. Litvin, 353 F.Supp. 1333, 1335-37 (D.D.C. 1973); United States v. Del Campo Baking Mfg. Co., 345 F.Supp. 1371, 1376 (D.Del.1972). Hence, neither the question of valid consent, nor the issue of a valid warrant, arise. United States v. Biswell, supra, 406 U.S. at 315, 92 S.Ct. 1593; United States v. Petrucci, supra, at 332; United States v. Business Bldrs., Inc., supra, at 142; United States v. Litvin, supra, at 1337; United States v. Del Campo Baking Mfg. Co., supra, at 1376. The statute, 18 U.S.C. § 923(g),[3] authorizes the Secretary of the Treasury to inspect and examine during business hours the records required of licensed dealers. Additionally, the statute authorizes the Secretary to transmit evidentiary information acquired from the search to law enforcement officers. Defendants do not contest this. Defendants' Reply Memorandum at 2.
The Secretary's special agent, therefore, properly removed the logbook for two reasons. First, lawful statutory authority to search, like valid consent, "carries with it the right to examine and photocopy" the records inspected. United States v. Ponder, 444 F.2d 816, 818 (5th Cir. 1971). In United States v. Business Bldrs., Inc., supra, the trial court denied the defendants' motion to suppress evidence of contaminated food that violated federal statutes, because the statutes granted Food and Drug inspectors the right to search the defendants' premises. Since the statute authorized Special Agent Daw to inspect the logbook, he also rightfully removed it in order to copy or otherwise preserve the evidentiary information contained in it. United States v. Ponder, supra, at 818. See United States v. Miller, 491 F.2d 638, 650-51 (5th Cir. 1974). Second, the lawful statutory authority to search also confers the right to seize evidence of criminal activity which is discovered in plain view during the course of the search. Coolidge v. New Hampshire, 403 U.S. 443, 464-68, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In United States v. Petrucci, supra, the Ninth Circuit Court of Appeals affirmed the conviction of a defendant under the same criminal statutes that are involved here. The court approved the trial court's denial of the defendant's motion to suppress unrecorded firearms that were seized during a search under the statutory authority.

*369 Having intruded legitimately, upon discovery of several unrecorded firearms, the agents were free to seize the weapons without a warrant as evidence or instrumentalities of illegal activity now in their "plain view" as a result of a lawful search. Id., at 332.
When he discovered evidence of illegal sales or recordkeeping while lawfully inspecting the logbook, Special Agent Daw rightfully seized it. Any objection of defendant Cooper, Jr., was based solely on the reasons of business necessity and inconvenience. Defendants' Reply Memorandum at 2-3; United States v. Ponder, supra, at 820. Neither that objection, nor the unduly long retention of the records by the Secretary, can invalidate the original legality of the removal. United States v. Miller, supra, at 651; United States v. Ponder, supra, at 820; United States v. Light, 394 F.2d 908, 914 (2d Cir. 1968). Hence, the information acquired from the logbook may be used as evidence against defendants. United States v. Petrucci, supra, at 332.
Moreover, defendants Cooper, Sr., and Cooper, Jr., lack the requisite standing to challenge the admissibility of the logbook and its evidentiary contents. Defendants are not entitled to "automatic standing" because possession of the logbook is not an element of an offense charged. Brown v. United States, 411 U.S. 223, 227-28, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Jones v. United States, 362 U.S. 257, 263-64, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Hunt, 505 F.2d 931, 938-39 (5th Cir. 1974). Rather, defendants' possession of the logbook is actually required by the statute and its implementing regulations.[4] Apart from those situations that confer "automatic standing," the litmus test for standing to suppress evidence seized in violation of the Fourth Amendment is whether the aggrieved person could reasonably expect privacy for the premises searched and the items seized. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); United States v. Hunt, supra, at 941. Proprietary or possessory interests in places searched or objects seized are not per se sufficient to confer standing to challenge a search and seizure: they are indicators of the reasonableness of the expectation of privacy that is asserted. United States v. Hunt, supra, at 923 and n. 8, 940. Where a privacy expectation is not reasonable, there can be no standing to assert Fourth Amendment claims, proprietary or possessory interest notwithstanding. Id., at 937. On the other hand, a person having a reasonable expectation of privacy in circumstances where he has no proprietary or possessory interests involved can still have standing to assert his Fourth Amendment rights. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). "The Fourth Amendment protects people, not places." Katz v. United States, supra, 389 U.S., at 351, 88 S.Ct., at 511.
Neither defendant has a reasonable expectation of privacy for the logbook or its contents. Defendant, Cooper, Sr., being an employee of Defendant Cooper, Jr., has no proprietary or possessory interest in the logbook of Clay Hardware, which is solely owned by Cooper, Jr. Cooper, Sr., therefore, cannot assert the property interests of his employer-son. United States v. Hunt, supra, at 939; United States v. Frick, 490 F.2d 666, 669 (5th Cir. 1973). Cf. United States v. Altizer, 477 F.2d 846 (5th Cir. 1973). Although Cooper, Sr., was legitimately on the premises searched, Jones v. United States, supra, 362 U.S. at 257, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Banks, 465 F.2d 1235, 1240 (5th Cir. 1972), the same statutory authority to search without a warrant that validated removal of the logbook precluded any reasonable expectation for its privacy for the logbook by Cooper, Jr., the proprietor who became a licensed dealer under *370 the Act. Under the statute and the regulations that implement it, 26 C.F.R. Sec. 178.127,[5] a licensed dealer has only a present possessory interest in the logbook, while the Government retains an interest akin to a shifting executory interest. Cf. United States v. Hart, 359 F.Supp. 835, 837, 839 (D.Del.1973). The logbook and its contents thus continue to remain available to the Government's inspection, and there can be no reasonable expectation of privacy for them. Without a reasonable expectation of privacy, defendants lack the requisite standing to challenge the admissibility of the logbook and its contents against them. Accordingly, the motion to suppress must be denied.
It is, therefore,
Ordered:
Defendants' motion to suppress the bound acquisition-disposition volume, and its contents, as evidence is hereby denied.
NOTES
[1] 18 U.S.C. Secs. 922(b)(3), (5) and 922(m) provide:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver
(3) any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the licensee's place of business is located, except that this paragraph (A) shall not apply to the sale or delivery of a rifle or shotgun to a resident of a State contiguous to the State in which the licensee's place of business is located if the purchaser's State of residence permits such sale or delivery by law, the sale fully complies with the legal conditions of sale in both such contiguous States, and the purchaser and the licensee have, prior to the sale or delivery for sale, of the rifle or shotgun, complied with all of the requirements of section 922(c) applicable to intrastate transactions other than at the licensee's business premises, (B) shall not apply to the loan or rental of a firearm to any person for temporary use for lawful sporting purposes, and (C) shall not preclude any person who is participating in any organized rifle or shotgun match or contest, or is engaged in hunting, in a State other than his State of residence and whose rifle or shotgun has been lost or stolen or has become inoperative in such other State, from purchasing a rifle or shotgun in such other State from a licensed dealer if such person presents to such dealer a sworn statement (i) that his rifle or shotgun was lost or stolen or became inoperative while participating in such a match or contest or while engaged in hunting, in such other State, and (ii) identifying the chief law enforcement officer of the locality in which such person resides, to whom such licensed dealer shall forward such statement by registered mail;
* * * * * *
(5) any firearm or ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.
* * * * * *
(m) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder. Added Pub.L. 90-351, Title IV, § 902, June 19, 1968, 82 Stat. 228, and amended Pub.L. 90-618, Title I, § 102, Oct. 22, 1968, 82 Stat. 1216.
18 U.S.C. Section 924(a) provides:
(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.
[2] Other constitutionally recognized exceptions to the search warrant requirement are (1) searches of mobile vehicles, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); (2) searches incident to detention: (a) arrest, United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); and (b) field investigatory stops ("stop and frisk"), Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); (3) searches in direct pursuit of fleeing suspects, Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); (4) consent searches, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); (5) inventory searches, Cady v. Dumbrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
[3] 18 U.S.C. Section 923(g) provides:

(g) Each licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary may by regulations prescribe. Such importers, manufacturers, dealers, and collectors shall make such records available for inspection at all reasonable times, and shall submit to the Secretary such reports and information with respect to such records and the contents thereof as he shall by regulations prescribe. The Secretary may enter during business hours the premises (including places of storage) of any firearms or ammunition importer, manufacturer, dealer, or collector for the purpose of inspecting or examining (1) any records or documents required to be kept by such importer, manufacturer, dealer, or collector under the provisions of this chapter or regulations issued under this chapter, and (2) any firearms or ammunition kept or stored by such importer, manufacturer, dealer, or collector at such premises. Upon the request of any State or any political subdivision thereof, the Secretary may make available to such State or any political subdivision thereof, any information which he may obtain by reason of the provisions of this chapter with respect to the identification of persons within such State or political subdivision thereof, who have purchased or received firearms or ammunition, together with a description of such firearms or ammunition.
[4] 27 C.F.R. Section 178.125 (1975).
[5] 27 C.F.R. Section 178.127 (1975).